## UNITED STATES v. SILVA et al.

### No. 239.

Circuit Court of Appeals, Second Circuit.

Feb. 5, 1940.

George W. Herz, of Ridgewood, N. Y., for appellant.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (Vine H. Smith, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for appellee.

Before SWAN, CLARK, and PATTERSON, Circuit Judges.

SWAN, Circuit Judge.

The appellant and Lucille Silva were indicted for conspiracy to maintain an unregistered still, with the usual substantive counts for possession of the still, fermented mash and unstamped distilled spirits. See 26 U.S.C.A. §§ 1152a, 1162, 1182, 1184 and 1185. Both were convicted on all counts. Antonio has appealed on the ground that the evidence is insufficient to sustain the verdict against him.

In May 1939 government agents found an unregistered still in operation on the second floor of a dwelling house occupied by Mrs. Silva and her minor children, in West Babylon, Long Island. It was a 75 gallon still. In another room on the second floor there were 700 gallons of mash in barrels and 50 gallons of alcohol in unstamped containers. Mrs. Silva admitted that she owned and operated the still and claimed that she had set it up herself. On the ice box in the kitchen the agents found certain papers bearing the name and photograph of the appellant and learned from a Mrs. Santos, who also lived in the house, that he was a bartender in the Cadet Grill in Jamaica. The government agents, with Mrs. Santos and Mrs. Silva, then drove to this address and there Mrs. Santos identified a man behind the bar as Justo Antonio. He was placed under arrest by one of the agents and told he was charged with operating the still. He said nothing in reply. On searching his person the agents found a wallet which contained, among other papers, a receipt or memorandum of a cash purchase of chemicals, which testimony showed are commonly used by illicit distillers. This memorandum did not mention the name of the purchaser and was dated September 30, 1937—a date 18 months prior to the earliest proven date of operation of the still at Mrs. Silva's. Mrs. Santos, called as a government witness, testified that she had seen Antonio come to the house "a couple of times a week" to call on Mrs. Silva or the children. He would sometimes bring fruit to the children or give them a dollar. She had never seen him bring anything else nor carry anything away; nor had she ever seen him in the still room. This was the whole of the government's case.

Both of the defendants took the witness stand. Their story was that they had been acquainted for some seven years, Antonio having been a friend of Mrs. Silva's husband. After the husband's death he became a boarder at her home on Greenwich Street, New York. Later she moved to the West Babylon house, and the papers there found belonging to Antonio were ones which had been left by him in the Greenwich Street house when he had been a boarder. He denied that the receipt for the purchase of chemicals had been found in his wallet and Mrs. Silva supported his denial by testimony that the agents had found it in her home. She said the paper had been given her by a man named Gorms who had also given her a still (not the one in operation) before going back to the old country.

It is probable that there was some one who cooperated with Mrs. Silva in the operation of the still and the disposal of its products. The appellant may have been an associate in her illegal enterprise but he may not. The proof against him was wholly circumstantial and was insufficient, in our opinion, to remove reasonable doubts from an impartial mind. From his frequent visits to the house it might be a reasonable inference that he may have known of the still, and from his employment as a bartender in a saloon that he may have had facilities for disposing of illicit liquor; but his mere knowledge of Mrs. Silva's crime does not connect him with it as a conspirator, and there is not the slightest evidence that he ever aided in the manufacture or disposal of the whiskey. We must take it that the jury believed that the receipt for purchased chemicals capable of use to hasten fermentation was found in his wallet and, since Mrs. Silva testified that it had been given to her by Gorms, the jury might infer that she had turned it over to the appellant. This raises a suspicion that she may have done so in order that he might buy chemicals for her still, but this is a highly speculative inference. Conceivably he might hold the receipt for a legitimate purpose; for example, merely as a memorandum of the name and address of a chemist. The appellant's mere possession of this 18 months old receipt is

not enough to lay at rest reasonable doubts as to his guilt. There was no direct evidence connecting him with any of the crimes of which he was convicted and the circumstantial evidence adduced by the government in this case is too slight to support the verdict.

Judgment reversed.